Christopher Sproul (State Bar No. 126398)
Jodene Isaacs (State Bar No. 226895)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376, (510) 847-3467
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: jisaacs@enviroadvocates.com

Attorneys for Plaintiff
OUR CHILDREN'S EARTH FOUNDATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>PABCO BUILDING PRODUCTS, LLC and PACIFIC COAST BUILDING PRODUCTS, INC.,<br><br>Defendants, | Civil Case No.: C 12-2791 LB<br><br>**NOTICE OF SETTLEMENT; [PROPOSED] ORDER DISMISSING COMPLAINT** |

**TO THE CLERK OF THE COURT, ANY INTERESTED PARTIES, AND THEIR
ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff, Our Children's Earth Foundation, and Defendants, Pabco Building Products, LLC and Pacific Coast Building Products, Inc. (collectively "Pabco"), (collectively, the "Parties") have reached settlement in the above-captioned case and have executed a Settlement Agreement.

PLEASE TAKE FURTHER NOTICE that U.S. Environmental Protection Agency regulations require that any proposed settlement of a Clean Water Act case must be provided to the United States Department of Justice and the national and Region IX offices of the United States Environmental Protection Agency ("federal agencies") prior to any judicial entry of the settlement. (*See* 33 U.S.C. §1365(c); 40 C.F.R. § 135.5.) Plaintiff provided the [Proposed] Settlement Agreement to the federal agencies for review on March 4, 2013 and on April 5, 2013, the United States Department of Justice notified the court and the parties of its non-objection to the proposed settlement. In accordance with federal law, judgment disposing of this action may be now be entered.

NOW THEREFORE, for the reasons set forth above, the Parties hereby stipulate, and respectfully request, that the Court: (1) approve and execute the Order dismissing the Complaint with prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure and (2) approve the attached Settlement Agreement which provides for continuing Court jurisdiction over any disputes which may arise between the parties under the agreement.

///

RESPECTFULLY SUBMITTED,

DATED:  April 5, 2013          By:          _____

/s/ James DuFour
JAMES DUFOUR
Attorney for Defendants

DATED:  April 5, 2013          By:          _____

/s/ Jodene Isaacs
JODENE ISAACS
Attorney for Plaintiff

Stipulation to Dismiss; [Proposed] Order
Civil Case No.: C 12-2791 LB

**[PROPOSED]** ORDER

After consideration of the Settlement Agreement between the parties attached to this order, I hereby dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) and retain jurisdiction over the parties with respect to any disputes that may arise under the Settlement Agreement.

APPROVED AND SO ORDERED, this ___11th___ day of  April, 2013.

By: _____
Hon. Laurel Beeler
U.S. District Court Magistrate Judge,
Northern District of California

## SETTLEMENT AGREEMENT

WHEREAS, Our Children's Earth Foundation ("OCE") is a non-profit public benefit corporation dedicated to protecting the environment, including San Francisco Bay;

WHEREAS, Pabco Gypsum, a division of Pabco Building Products, LLC, a subsidiary of Pacific Coast Building Products, Inc. (collectively "PABCO") operates a bulk gypsum marine cargo unloading, storage, and transfer facility within the port of Redwood City and located at 675 Seaport Boulevard, Redwood City, California ("the Facility");

WHEREAS, the discharge of pollutants into waters of the United States is regulated by the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251, *et seq.* and is unlawful except as authorized by a National Pollutant Discharge Elimination System ("NPDES") Permit issued pursuant to section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342;

WHEREAS, on April 5, 2012, OCE served PABCO, the United States Environmental Protection Agency, the State Water Resources Control Board, the San Francisco Regional Water Quality Control Board, the United States Attorney General and other individuals and entities with a notice of intent to file suit ("60-Day Notice") under CWA sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(a)(1) and (f), alleging CWA violations at the Facilities;

WHEREAS, OCE filed a complaint ("Complaint") against PABCO in the United States District Court, Northern District Court of California on May 31, 2012 and contends that PABCO has repeatedly discharged polluted storm water in violation of the CWA and discharged pollutants without full compliance with NPDES permit authorization,

WHEREAS, PABCO denies all allegations set forth in the 60-Day Notice and Complaint and contends that OCE's Complaint should be dismissed;

WHEREAS, OCE and PABCO (the "Parties"), through their authorized representatives and without either adjudication of OCE's claims or admission by PABCO of any alleged violation or other wrongdoing, choose to resolve in full OCE's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

WHEREAS, OCE and PABCO agree that it is in their mutual interest to enter into this Agreement setting forth the terms and conditions appropriate to resolve this matter without further litigation;

NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

## I.      COMMITMENT OF PABCO

1.      In order to reduce or prevent pollutants in storm water associated with the unloading, storage, and transfer of bulk gypsum and to eliminate alleged unauthorized non-storm water discharges from each Facility into the waters of the United States, PABCO shall implement appropriate structural and non-structural Best Management Practices ("BMPs") as described more fully below.

## II.     FACILITY COMPLIANCE MEASURES

2.      **Site Map**: Within sixty (60) days of the date on which each Party signs this Agreement ("Effective Date"), PABCO shall prepare a map of the facility ("Site Map") that comprehensively depicts the flow of storm water at the Facility. The Site Map shall clearly identify the property boundaries, known or suspected drop inlets, ground type (pervious or impervious), berms, dikes, walls and all other structures controlling the flow of surface water, and all other physical structures or items relevant under this Agreement.  OCE shall have twenty-

2

one (21) days from receipt of the Site Map to propose any changes or clarifications to be added

to the Site Map.  PABCO shall make all requested changes to the Facility Site Map within thirty

(30) days of receiving OCE's comments unless the Parties agree otherwise or PABCO timely

invokes Dispute Resolution and prevails in Dispute Resolution.  If PABCO should alter the Site

Map during the term of this Agreement, PABCO shall provide OCE a copy of the Site Map by

no later than June 15th each year that this agreement is in effect.  OCE shall have twenty-one (21)

days from receipt of any revised Site Map to propose any changes or clarifications to be added to

the Site Map.  PABCO shall make all requested changes to the Facility Site Map within thirty

(30) days of receiving OCE's comments unless the Parties agree otherwise or PABCO timely

invokes Dispute Resolution and prevails in Dispute Resolution.

3.      **Designated Discharge Point(s)**:  Within sixty (60) days of the Effective Date, to

the extent not already implemented, PABCO shall identify on the Site Map every location at

which storm water and non-storm water is known to be discharged or which may potentially be

discharged from the facility ("Designated Discharge Point ") along with Storm Water Pathways

("Drainage Areas").  Each Designated Discharge Point shall be numbered and clearly labeled on

the Site Map.  In the event that any additional Discharge Point(s) is identified, it shall be

included and numbered on a revised Site Map.  Storm Water Drainage Areas shall be identified

by arrows or other designation on the Site Map.  For purposes of this paragraph, it shall be

presumed by the parties that there is one (1) discharge point known as CI-1 as of the Effective

Date.

4.      **Designation of Storage Areas**:  The outdoor storage areas at the Facilities where

bulk gypsum is stored  awaiting transport will hereinafter be referred to as the "Material Storage

3

Areas," and within sixty (60) days of the Effective Date shall be designated on the Facility's Site Map as such.

5.    **Designation of Material Transfer Areas**:  The portion of the Facilities where bulk gypsum is transferred, including but not limited to: (a) loading and transport of gypsum from bulk carrier (e.g. container ship) to conveyor belt; (b) loading and transport of gypsum from rail cars to conveyor belt; (c) preparation for loading and/or loading of trucks with gypsum from conveyor belt or front loader, (d) movement or transport of gypsum by front loader, and within sixty (60) days of the Effective Date be designated on the Facilities' Site Map, as the "Material Transfer Areas."  PABCO shall operate the Facilities such that Material Transfer activity areas that generate dust, fine particulate matter, or other materials that can be tracked or entrained in storm water discharging from the Facilities are principally conducted within the Material Transfer Areas.  Within sixty (60) days of the Effective Date, PABCO shall update the SWPPP to fully describe all Material Transfer activities that occur, and their location within the Material Transfer Area.

6.    **Dust Generating Activities**:  Within sixty (60) days of the Effective Date, PABCO shall update the SWPPP and Site Map for the Facility to fully describe all material storage and handling activities that generate gypsum dust or particulates that may be deposited within the Facility's boundaries and identify their deposition locations; the characteristics of dust and particulate pollutants; the approximate quantity of dust and particulate pollutants that may be deposited within the facility boundaries; and a description of the primary areas of the facility where dust and particulate pollutants would settle.  For purposes of quantification of dust generation, estimates of the approximate quantity based on Bay Area Air Quality Management District permit data shall be acceptable.  PABCO shall denote all actions taken to control the

4

deposition of dust and particulate matter at the Facility including a full description of its dust suppression program.

7. **Designation of All Sampling Locations**: Within sixty (60) days of the Effective Date, PABCO shall update the SWPPP to fully describe the protocol for taking storm water samples during the Wet Season of each year or years this Agreement is in effect. "Wet Season" is defined as between October 1 through May 31 (hereinafter, Wet Season), except as modified, for the 2015/16 (Third Year) Wet Season as set forth in Paragraph 17. The description shall set forth where and when the samples are to be collected and shall further explain why the sample points are representative of off-site discharge. Pursuant to Facility Monitoring described below, PABCO shall include the Discharge point(s) designated pursuant to Paragraph 3 in the sampling and monitoring program.

8. **Construction of Stormwater Controls**: Within thirty (30) days of the Effective Date, PABCO shall prepare and submit a plan to OCE for the construction of stormwater controls ("Construction Plan") which shall include a date for completion for each stormwater control. The stormwater controls shall be designed so as to prevent stormwater from being conveyed from a minimum number of points (i.e., driveways and downstream curb inlets). A high berm shall be maintained around the perimeter on the northern-eastern boundary of the Designated Storage Area (side of Facility bordering Sims Metals and Clean Harbors facilities The high berm shall be sufficiently high to keep the large piles of gypsum contained within the facility perimeter and prevent spillage onto the adjacent facility. A low berm in the style of a wide speed bump shall be designed for the driveways which allows vehicle traffic to enter and leave the Facility but controls stormwater discharge. The low berm shall be of sufficient height and width to keep gypsum contained within the facility perimeter and from dispersing into

5

roadway where they will be tracked and entrained in stormwater flows in the street.  In addition, the existing stacks of concrete blocks adjacent to the roadway shall be repositioned and/or increased in height as necessary to keep gypsum from falling into the roadway. OCE shall have twenty-one (21) days from receipt of the Construction Plan to propose any changes or modification to be added to meet the intended goal of constraining stormwater discharges. PABCO shall make all requested changes to the Construction Plan within twenty-one (21) days of receiving OCE's comments, unless the Parties agree otherwise or PABCO timely invokes Dispute Resolution and prevails in Dispute Resolution, and thereafter implement the Construction Plan according to the agreed upon construction timeframes.

9.     **Facility Monitoring**:  Within thirty (30) days of the Effective Date, and annually thereafter during the term of this Agreement during each Wet Season, PABCO shall conduct weekly inspections of the Facility.  Such inspections shall include driveways, outdoor equipment storage areas, Material Storage Areas, and all Material Transfer Areas. All Designated Discharge Points and Drainage Areas shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During rain events, PABCO shall observe all storm water flow pathways, potential discharge areas, such as the perimeter and southern-most driveway to determine if storm water accumulation is occurring, and document the extent (i.e. approximate width and depth) of the ponding across the public roadway during the Wet Season.  PABCO shall include the pond related observations in the End of Season Summary discussed in Paragraph 27 below.

10.     **Facility Inspection and Best Management Practices**:

a.     Within thirty (30) days of the Effective Date, PABCO shall install structural controls in the form of a low asphalt barrier or berm, approximately two feet by eight feet, around the north curb inlet Designated Discharge Point (i.e., the historic sampling point for the Facility, CI-1) designed to slow the flow of stormwater and to allow placement of two ten (10) inch diameter straw wattles used to filter out sediments from PABCO's stormwater discharges.

b.     Prior to October 1 of each year or within seven (7) days of the first forecasted storm event with a probability of 40% or greater in each Wet Season of each year that this Agreement is in effect, PABCO shall inspect CI-1 and clean as needed using a vacuum or other suitable method in order to remove debris, dust and sediment, that have entered the curb inlet.

c.     During each Wet Season that this Agreement is in effect, PABCO shall inspect CI-1 between storm events, and clean out any sediments deposited into it. PABCO shall properly dispose of any dust, sediment, or other pollutants removed from CI-1 and replace straw wattles as needed to maintain the BMP in good working order.

d.     From June 1 to September 30 (hereinafter, the "Dry Season") of each year that this Agreement is in effect, PABCO shall cover CI-1 with a solid cover that will prevent dust and solids from collecting in the inlet.

e.     PABCO shall prepare and maintain a log of the curb inlet inspections and maintenance ("Inspection Log"). The Inspection Log shall indicate the staff who completed the inspection and maintenance activity and when it was completed.  The

Inspection Log shall be made available for inspection by OCE at the site inspection authorized herein or otherwise within five (5) business days advance request by OCE.

11.     **Site Sweeping and Cleaning Best Management Practices**: Within thirty (30) days of the Effective Date, PABCO shall complete a comprehensive site cleaning using regenerative sweeper, for all areas where a regenerative sweeper can feasibly be operated, and manual methods, for all remaining areas, to remove significant accumulations of dust, debris, sediment, or other pollutants from all paved surfaces, including curbs, under machinery and conveyors belt areas such that the underlying asphalt or pavement is visible. PABCO shall send OCE photos documenting completion of this task within thirty (30) days of the Effective Date.

a.     **Site Sweeping and Cleaning Plan**: Within sixty (60) days of the Effective Date, PABCO shall prepare and provide OCE with a Site Sweeping and Cleaning Plan that describes sweeping and cleaning actions that, in conjunction with other appropriate BMPs, shall be sufficient to prevent contaminants from being unintentionally moved around and offsite from the Facility, to reduce the entrainment of pollutants into storm water flows, to prevent pollutants from being blown off the Facility, to keep all paved areas of the Facility clean and visible, and to prevent pollutants from being tracked off the Facility onto surface streets.  The Plan shall specifically include at least the following measures: (a) identification of areas where mechanical sweeping is feasible, areas where manual sweeping only, as needed, is feasible, and areas where sweeping is not feasible (such as unpaved areas, or under piles of materials that are not reasonably movable), (b) Wet Season and Dry Season schedules for mechanical and manual sweeping of areas identified as appropriate for daily sweeping, except during periods of rain, (c) triggers for more frequent ad hoc

8

sweeping or cleaning such as visual accumulation of dust or debris, (d) use of a regenerative sweeper, which may be supplied by a vendor or contractor whose equipment shall be rebuttably presumed effective to meet the obligations of this paragraph, (e) a schedule for the annual inspection and comprehensive site cleaning, (f) a sweeping schedule that includes  sweeping of the public streets and curbs for approximately two hundred (200) feet the Facility entrances and exits at least three times a week in the Wet Season and twice a week during the Dry Season, (g) hand sweeping of curbs downstream of the Facility and small berms in driveways as needed based on observations during Facility inspections to keep materials from lodging in these areas where they can be picked up by stormwater and deposited into area storm drains, and (h) specification that PABCO will collect and dispose of all wastes generated during Facility cleaning and sweeping in a manner that complies with all local, state, and federal laws.

b.     **Site Sweeping and Cleaning Log**:  PABCO shall keep a log or checklist, as appropriate, of the sweeping and any other site cleaning activity performed which identifies the employee and/or contractor who conducted the sweeping or cleaning, the location of the sweeping or cleaning, and the date of the sweeping or cleaning activities. The form for this log or checklist shall be adopted by PABCO as part of the Site Sweeping and Cleaning Plans referred to in the preceding paragraph. PABCO shall direct employees and/or contractors to accurately complete this form for those sweeping and cleaning actions specified in such log in accordance with the Site Sweeping and Cleaning Plan. PABCO shall make the sweeping and cleaning log or

checklist available for inspection by OCE at the site inspection authorized herein or otherwise with five (5) business days advance request by OCE.

      c.    OCE shall have twenty-one (21) days from receipt of the Sweeping Plan to propose any changes or modification to be added to meet the intended goal of preventing contaminants from being moved around and offsite from the Facility, reducing  pollutants in storm water flows, keeping all paved areas of the Facility clean and visible, and preventing pollutants from being tracked off the Facility onto surface streets.  PABCO shall make all requested changes to the Sweeping Plan within twenty-one (21) days of receiving OCE's comments unless the Parties agree otherwise or PABCO timely invokes Dispute Resolution and prevails in Dispute Resolution.

12.    **Traffic Flow:** Within sixty (60) days of the Effective Date, PABCO shall update the SWPPP to fully describe the type, direction, and estimation of current volume of vehicle traffic at the Facility.

13.    **Berm and Pavement Repair**: PABCO shall repair or replace cracking pavement and existing concrete berms or concrete walls to the extent that the cracks are interfering with the function of the pavement, berm, or wall within sixty (60) days of the Effective Date. PABCO shall routinely inspect paved areas and implement additional repairs or replacement of pavement on an as needed basis.

14.    **Training**: Within sixty (60) days of the Effective Date, and annually thereafter, and within thirty (30) days of hiring of new employees, PABCO shall conduct training for all appropriate employees to explain the requirements of the Facilities' SWPPPs to the extent applicable to such employee.  Training shall focus on the employee's role in implementing

10

various storm water control measures including, for example, implementation of BMPs, sweeping, or facility inspections.  Training shall be conducted bilingually (*i.e.,* Spanish/English or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English.  Within sixty (60) days of the Effective Date, PABCO shall update each Facilities' SWPPP to include the training requirements set forth herein, to the extent such training is not already performed, and to identify all personnel responsible for carrying out storm water management, monitoring, sampling, and SWPPP implementation at each Facility.

15.    **Maintenance of BMP Structural Controls**:  After the Effective Date, PABCO shall maintain structural BMPs at each Facility in good operating condition during the Wet Season and shall promptly repair any damaged or degraded structural BMPs.

16.    **Amendment of SWPPP**:  Unless otherwise specified, within sixty (60) days of the Effective Date, PABCO shall amend the Facility's SWPPP to incorporate the facility compliance measures set forth in paragraphs 2 through 16 of this Agreement and provide the SWPPP to OCE.

## III.    SAMPLING, MONITORING, INSPECTION & REPORTING

17.    **Sampling Program**:  After the Effective Date, subject to the limitations set forth below,  PABCO shall collect and analyze storm water samples from the Designated Discharge Point(s) at the Facility according to the following sampling schedule:

a.    During the Wet Season of 2012-2013, PABCO shall collect two (2) stormwater samples from the Designated Sampling Point unless the Designated Sampling Point does not discharge two times, in which case, PABCO shall collect as many stormwater samples as possible, provided that all samples are at least 48-hours apart.  During the Wet Seasons of 2013-2014 (First Year) and 2014-2015 (Second

Year), PABCO shall collect three (3) stormwater samples per year from the Designated Discharge Point(s), unless the Designated Discharge Point(s) does not discharge three times during each Wet Season, in which case, PABCO shall collect as many stormwater samples as needed to reach three (3) samples, provided that all samples are at least 48-hours apart. During the Wet Season of 2015-2016 (Third Year), PABCO shall collect two (2) stormwater samples prior to February 1, 2016 unless the Designated Sampling Point does not discharge two times, in which case, PABCO shall collect as many stormwater samples as possible, provided that all samples are at least 48-hours apart.

      b.     PABCO shall analyze each storm water sample collected for the presence of each of the parameters listed on the Sampling Chart attached hereto as Exhibit 1. If PABCO obtains two consecutive samples from each of the Designated Discharge Points at the Facility which are below the Benchmark Levels in Exhibit 1 for a given constituent, PABCO need not have its storm water from that Facility analyzed for that particular constituent for the remainder of this Agreement. Should operations materially change at the Facility, PABCO shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in PABCO's storm water discharges in quantities that will cause or contribute to exceedance of receiving water quality standards as a result of the changed operations. Material change shall not mean an increase of activity or volume of gypsum stored or transferred.

     18.    **Certified Lab**: PABCO shall have all storm water samples collected pursuant to this Agreement delivered to a California state certified environmental laboratory for analysis

within the time needed for analysis within laboratory method allowable hold times.  The
laboratory shall conduct analysis sufficient to detect individual constituents at or below the levels
set forth in the attached Exhibit 1.

19.    **Sample Result Reporting**: PABCO shall provide complete results from
PABCO's sampling and analysis to OCE within fifteen (15) days of receipt of the laboratory
report from each sampling event.

20.    **Action Plan Trigger Levels**: PABCO will compare analytical results of its 2013-
2014, 2014-2015, and 2015-2016 Wet Season storm water samples with the Target and
Benchmark levels in Exhibit 1 to evaluate the effectiveness of BMPs.  If the level of pollutants in
PABCO's storm water discharges exceeds the Target or Benchmark levels for Total Suspended
Solids, Oil and Grease, pH, and Iron (hereinafter "Actionable Levels") in Exhibit 1 during each
Wet Season PABCO shall comply with the assessment and Action Plan requirements specified
below.  Regardless of whether an Action Plan is required, PABCO shall ensure that all BMPs at
the Facilities are maintained in proper working condition.

21.    **Action Plan,**:  Except for the 2015-2016 Wet Season, by July 15th of each year
that this Agreement is in effect, PABCO shall prepare and send to OCE an Action Plan for BMP
enhancements if storm water sample results for that Facility exceed Actionable Levels defined in
Paragraph 20. For the 2015-2016 Wet Season, in the event an Action Plan is required, it shall be
due by February 22, 2016.

22.    **Contents of Action Plans**: An Action Plan shall set forth:  (1) the constituent
concentrations from Designated Discharge Point samples collected at each Facility exceeding the
Actionable Levels in Exhibit 1 ("Exceedances"), (2) the possible sources of such Exceedances,
(3) to the extent not already evaluated by PABCO (*e.g.*, in prior Action Plan), BMPs that

13

PABCO will evaluate to attempt to reduce the level of pollutants associated with the Exceedances in future storm water discharges to the Target or Benchmark levels (considering, if appropriate, specific subsequent storm water testing within the Facility to attempt to identify areas within the Facility that may generate material levels of storm water pollutants), (4) any completed evaluations of additional BMPs (to the extent that such evaluations are then complete), (5) recommended BMPs (if any) resulting from such evaluation, (6) BMPs to be implemented; and (7) a schedule to implement any new BMPs by the earliest practicable time (in all cases, PABCO shall propose an BMP implementation schedule that provides for BMP implementation as expeditiously as feasible, and before the next Wet Season, if possible). The Action Plan may include, for Actionable Levels, any technical or regulatory information relevant to calculating compliance with relevant Actionable Levels. The following BMPs should generally be evaluated in order to attain Benchmark levels or Target Levels:

      a.    <u>Hydraulic Controls</u>: in appropriate paved portions of the Facilities, installation of additional berms or equivalent structural controls (if necessary to reduce or prevent storm water from flowing into or, other than through the engineered storm water conveyance system, out of one or more areas within the Facilities that serve as potential sources of contaminated storm water runoff to the extent that such storm water would discharge from the Facilities).

      b.    <u>Detention</u>: Additional on-site retention or detention of storm water to minimize storm water discharges (overall or from specific areas) or to detain storm water runoff for sufficient detention time so as to reduce pollutants in the discharge.

      c.    <u>Sweeping Technology</u>: The use or increased use of regenerative sweepers (a regenerative sweeper is a mechanized sweeper that uses a blast of air in front of the

brushes to raise tiny particles and improve sweeping performance) and high

efficiency vacuum assisted dry sweepers, as well as alternate sweeping-vacuum as

PABCO deems appropriate, and other methods to reach and clean all material areas

where mechanized sweepers cannot effectively reach.  Sweeping frequency shall also

be evaluated, and increased as necessary.

   d. <u>Visual "Track Off" To Public Streets</u>:  additional BMPs necessary to

reduce or prevent visual "track off" of material from the facility onto public streets.

   e. <u>Paving Additional Unpaved Areas</u>: to the extent not already implemented,

paving appropriate portions of unpaved portions of the Facility where significant

vehicle traffic occurs and from which storm water discharges from the Facility.

   f. <u>Pressure Washing</u>: PABCO shall consider pressure washing to enhance

removal of polluting materials.

   g. <u>Other Structural BMPs</u>:  PABCO shall consider other Structural BMPs as

described in the State Water Resources Control Board Water Quality Order No. 97-

03-DWQ, Section A, Paragraph 8(b), to reduce discharges of Actionable Levels of

stormwater pollutants.

   h. <u>Evaluation of BMPs</u>:  PABCO shall consider replacing, rehabilitating, or

eliminating existing BMPs, by taking into account the age of the BMPs involved or

employed, the engineering aspect of the application of various BMPs, the cost of the

BMPs, and any adverse environmental impact of the BMPs.

   i. Such other additional BMPs as PABCO deems appropriate for evaluation.

  23. In the 2013-2014 and 2014-2015 Wet Seasons, OCE shall have thirty (30) days

from receipt of an Action Plan to comment on and/or propose revisions to the Action Plan and

explain in writing the basis for each such revision.  Within forty-five (45) days of receiving

OCE's comments and/or proposed revisions, PABCO shall adopt OCE's requested revisions to

the Action Plan unless the Parties otherwise agree or PABCO timely invokes and prevails in

Dispute Resolution. For the 2015-2016 Wet Season, OCE shall have ten (10) days from receipt

of an Action Plan to comment on and/or propose revisions to the Action Plan and explain in

writing the basis for each such revision. Within fourteen days (14) days of receiving OCE's

comments and/or proposed revisions, PABCO shall adopt OCE's requested revisions to the

Action Plan.

24.     PABCO shall implement the Action Plan(s) adopted pursuant to this Agreement

as an obligation of this Agreement.

25.     Within thirty (30) days after an Action Plan is adopted pursuant to this

Agreement, PABCO shall amend its SWPPP to include all BMPs set forth in the Action Plan not

otherwise implemented and included in the SWPPP.  Within thirty (30) days thereafter pursuant

to this paragraph, PABCO shall provide OCE with a copy of such revised SWPPP.

26.     During each Wet Season, PABCO is under an ongoing obligation to evaluate the

BMPs implemented at each Facility and discussed in current or previous Action Plans and

continue to attempt to reduce the level of pollutants for the remainder of the Wet Season.

PABCO shall use the results from subsequent storm water samples as they become available to

assist with its ongoing evaluation of the effectiveness of BMPs.

27.     **End of Season Summary**:  By July 15th of each year that this Agreement is in

effect, PABCO shall provide OCE an end of season summary report that includes a summary

chart with all the sample results from the previous Wet Season and documentation describe the

extent of ponding in the roadway throughout the Wet Season as described in Paragraph 9. In the

event that no Action Plan is required that year as well as the 2012-2013 Wet Season, PABCO shall provide OCE an end of season summary report for the Facility that includes (1) a summary chart with all the sample results from the previous Wet Season, (2) an explanation of whether PABCO has implemented or will implement new BMPs not already discussed in a prior summary report or Action Plan, and (3) an evaluation of the effectiveness of any new BMPs implemented in the prior year.  If no Action Plan is required in the 2015-2016 Wet Season, PABCO shall provide the End of Season Summary by February 29, 2016.

28.    **Stipulated Payments**: PABCO shall pay the following stipulated payments during the term of this Agreement:

a.    In the event PABCO fails to submit to OCE any document, report or other communication required under paragraphs 2, 8, 11, 11.a., 16, 19, 21, 25, 27, and 31 of this Agreement, for any report more than five (5) business days (Monday through Friday, excluding state and federal holidays) late, PABCO shall pay a per day payment of Three Hundred and Fifty Dollars ($350) commencing on the sixth (6th) business day after the report due date;

b.    PABCO shall pay Five Hundred Dollars ($500) for any sample results during each Wet Season 2013-2014, 2014-2015, and 2015-2016  for which there was an Exceedance of the Benchmark Levels for Total Suspended Solids, Oil & Grease, or Iron if OCE clearly establishes that Pabco's activities rather than comingled stormwater from neighboring facilities were responsible for the exceedances;

c.    For every business day (Monday through Friday, excluding state and federal holidays) that a  measure of specific performance required by this Agreement does not comply with the Agreement, and PABCO has failed to correct the non-

17

performance or invoke Dispute Resolution, PABCO shall pay a per day payment of Three Hundred and Fifty Dollars ($350), unless PABCO's position prevails in Dispute Resolution. The measures of specific performance at issue here include PABCO's obligations under Paragraphs 8 (construction of stormwater controls), 9 (ongoing Facility Monitoring), 10 (curb inlet inspection and construction of related BMPs), 11 and 11(b) (initial cleaning and maintaining a sweeping log), 13 (repairs to pavement, berms, and/or walls), 14 (annual and new employee training), 17 (collect and analyze the required number of stormwater samples unless PABCO can clearly demonstrate that collection of the required number of samples was not feasible due to insufficient rainfall during that wet season), and 24 (implementation of Action Plan).

       d.        PABCO shall incur a Three Hundred and Fifty Dollar ($350) per day payment for every business day (Monday through Friday, excluding state and federal holidays) five (5) days past the due date that PABCO fails to submit to any payments required under paragraphs 28, 29, or 32-34 of this Agreement.

       e.        The total amount of stipulated payments accrued under Paragraphs 28 (a) and (d) in each of the years that this Agreement is in effect shall be capped at five thousand dollars ($5,000) per year. In any case, the total amount of stipulated payments accrued in each year that this Agreement is in effect shall be capped at ten thousand dollars ($10,000) per year.

       f.        All payments of stipulated payments described above shall be paid annually by PABCO no later than September 1st of each year, via overnight mail to: Rose Foundation, 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little, with a copy of payment sent concurrently to OCE.  Stipulated payment funds will be used by

the Rose Foundation to fund projects that benefit water quality in the San Francisco

Bay watershed.

29.     **Reduction in Stipulated Payments**: PABCO shall be allowed a fifty percent

(50%) reduction of any stipulated payment due in any given year pursuant to the preceding

paragraph if PABCO provides OCE with a certification signed under penalty of perjury stating

that PABCO will, within one year, spend or be under contract to spend the balance of the sum

that would otherwise be due as a stipulated payment on alternative environmental enhancements.

PABCO's proposal(s) for alternative environmental enhancements shall be submitted for review

and approval by OCE prior to PABCO's submittal of a certification pursuant to this paragraph.

After PABCO and OCE have reached written agreement on an alternative environmental

enhancement measure, PABCO shall implement the measure as an obligation of this Agreement.

Permissible alternative environmental enhancements shall include:  (a) the acquisition of, or

subsequent structural modification to, an improved new state of the art storm water filtration

system designed for aggregate handling facilities and approved by OCE; (b) acquisition and

operation of a regenerative sweeper or high efficiency vacuum assisted dry sweeper; (c) entering

into a contractual arrangement with a service that would provide sweeping with a regenerative

sweepers or high efficiency vacuum-assisted dry sweepers on a regular basis; and (d) increasing

the frequency of sweeping with existing equipment and/or hiring of additional personnel to

perform sweeping related activities, pursuant to a modified sweeping plan approved by OCE.

PABCO must further submit within thirty (30) days of completing the foregoing alternative

environmental enhancement project a subsequent notice to OCE explaining how PABCO

expended the funds and how this expenditure met the required terms.  If PABCO fails to meet all

19

conditions of this paragraph, then it must pay the balance of the stipulated payment sum not yet

paid within thirteen (13) months from the date the payment was originally due.

30.    **Site Access**:  During the term of this Agreement, PABCO shall permit

representatives of OCE to perform one (1) physical inspection per year of the Facility during

operating hours, which may include sampling, and agreed-upon photographing and/or

videotaping compliant with applicable Federal Rules of Civil Procedure. OCE shall provide

PABCO notice at least five (5) business days in advance of such physical inspection, and

PABCO shall have the right to deny access if circumstances would make the inspection unduly

burdensome and pose significant interference with business operations.  In such case, PABCO

shall specify at least three (3) days within the next four (4) weeks upon which a OCE inspection

may proceed, with twenty-four (24) hours notice, during normal business hours.  PABCO shall

not use the period of OCE advance notice pursuant to this paragraph to make any alterations to

Facility conditions that PABCO would not otherwise have made but for receiving advance notice

of OCE's requested site access such that OCE will be allowed to inspect and sample normally

representative Facility conditions and storm water discharge.

31.    **Reports**:  During the term of this Agreement, PABCO shall provide OCE with a

copy of all documents that may be submitted to the Regional Water Quality Control Board, San

Francisco Region ("the Regional Board") or the State Water Resources Control Board ("State

Board") concerning storm water or non-storm water discharges from the Facility. Such

documents and reports shall be transmitted to OCE via electronic mail, if feasible, or by U.S.

Mail when electronic transmission is not feasible, at the time the documents are due to be

submitted to the Regional Board or State Board.

**IV.    MITIGATION, FEES, AND COSTS**

20

32. **Environmental Mitigation Funding**:  As mitigation of the violations alleged in OCE's 60-Day Notice and Complaint, within thirty (30) days of the Effective Date, PABCO shall pay the sum of twenty-five thousand dollars ($25,000) to the Rose Foundation for the Environment to fund projects that will benefit water quality in the San Francisco Bay watershed. Payment shall be made to the Rose Foundation for the Environment, 6008 College Avenue, Oakland, California  94618, Attn: Tim Little, with a copy of payment sent concurrently to OCE.

33. **Reimbursement of Fees and Costs**:  PABCO shall reimburse OCE in the amount of forty-two thousand and five hundred dollars $ 42,500 to help defray OCE's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facilities related to this Agreement, bringing these matters to PABCO's attention, and negotiating a resolution of this action in the public interest. PABCO shall tender payment to Environmental Advocates Attorney-Client Trust Account within thirty (30) days of the Effective Date.

34. **Compliance Monitoring Funds:**  PABCO shall reimburse OCE five thousand dollars ($5,000) per year for each of the years of the term of this Agreement, in the total amount of $15,000 for costs and fees associated with monitoring PABCO's compliance with this Agreement.  Monitoring activities include the authorized site inspection, review of water quality sampling reports, review of Action Plans and other documents submitted pursuant to this Agreement, discussion or written communication with representatives of PABCO concerning potential changes to compliance requirements, water quality sampling, informal dispute resolution, and other actions necessary to monitor and ensure PABCO's compliance with this Agreement. The compliance monitoring fund payment shall be made in three installments of five thousand dollars ($5,000) each and shall be made payable to Environmental Advocates Attorney-

21

Client Trust Account. The first installment shall be paid within thirty (30) days of the Effective

Date, and the remaining installments shall be paid  on April 15, 2014 and April 15, 2015,

respectively.

35.     **Dispute Resolution**: If a dispute under this Agreement arises, or either Party

believes that a breach of this Agreement has occurred, the Parties shall schedule a meet and

confer within ten (10) business days of receiving written notification from the other Party of a

request for a meeting to determine whether a violation has occurred and to develop a mutually

agreed upon plan to resolve the dispute.  If the Parties fail to meet and confer or the meet and

confer does not resolve the issue, after at least seven (7) days have passed after the meet and

confer occurred or should have occurred, either Party shall be entitled to invoke mediation under

the District Court Alternative Dispute Resolution ("ADR") program for resolution of the dispute.

If the parities mutually agree in writing that further ADR meditation of any dispute is not in

order, or more than sixty days have passed after  either party has invoked mediation under the

District Court's ADR program, either Party shall be entitled  to bring a motion before the United

States District Court for the purposes of enforcement of the terms of this Agreement.  The Parties

shall be entitled to seek fees and costs incurred in any such action, and such fees and costs shall

be awarded, pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33

U.S.C. §1365(d), and applicable case law interpreting such provision.

## V.     JURISDICTION AND STIPULATION TO DISMISS

36.     **Jurisdiction**.  For the purposes of this Agreement, the Parties agree that the

United States District Court of California, Northern District of California ("District Court") has

jurisdiction over the Parties and the subject matter of this Agreement.  The Parties further agree

that venue is appropriate in the Northern District of California and that PABCO will not raise in

the future as part of enforcement of this Agreement whether OCE has standing to bring the Complaint.

37. **Submission of Settlement Agreement to DOJ**.  Within three (3) business days of receiving all of the Parties' signatures to this Agreement, OCE shall submit this Agreement to the U.S. Department of Justice ("DOJ") for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by the certified return receipt, a copy of which shall be provided to PABCO upon receipt by OCE. In the event DOJ comments negatively on the provisions of this Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by DOJ.

38. **Stipulation to Dismiss With Prejudice.**  Within ten (10) calendar days of the expiration of the DOJ's 45-day review period as provided in this Agreement, the Parties will submit this Agreement to the District Court along with a Stipulation and proposed Order which shall provide:

a.    For dismissal of the Complaint and all claims therein with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2);

b.    That the Court shall retain and have jurisdiction over the Parties with respect to resolving disputes arising under this Agreement; and

c.    If any court of competent jurisdiction subsequently finds that the Court lacks jurisdiction to resolve any dispute that may arise under this Agreement and enforce this Agreement in accord with the Court's resolution of the dispute, the Parties stipulate that (1) they will jointly request the Court to set aside dismissal of the Complaint and to reinstate the Complaint for the sole purpose of providing the Court jurisdiction to resolve the dispute and enforce this Agreement accordingly and

23

(2) should the Court decline to do so, this Agreement shall be deemed a binding contract enforceable as a contract by either the California Superior Court for the County of San Mateo or the California Superior Court for the County of San Francisco.

## VI. WAIVER, RELEASES, AND COVENANT NOT TO SUE

39. **OCE Waiver and Release of Noticed Parties and Covenant Not to Sue**: Upon the Effective Date, OCE, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates and each of their successors and assigns and its agents, attorneys, and other representatives covenants not to sue PABCO or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys and other representatives with respect to any discharges of storm water from the Facilities that arose before or may arise during, the term of this Agreement. OCE, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates and each of their successors and assigns and its agents, attorneys, and other representatives, releases PABCO or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys and other representatives from and waives all claims which arose from or pertain to the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the Complaint.

40. **PABCO Waiver and Release of OCE**: PABCO, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys and other representatives, releases OCE and its officers,

24

directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors

and assigns and its agents, attorneys and other representatives from, and waives all claims which

arise from or pertain to the 60-Day Notice or Complaint, including all claims for fees (including

fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or

which could have been claimed for matters associated with or related to the 60-Day Notice or

Complaint.

41.    **No Admission**:  The Parties enter into this Agreement for the purpose of avoiding

prolonged and costly litigation.  Nothing in this Agreement shall be construed as, and PABCO

expressly does not intend to imply, any admission as to any fact, finding, issue of law, or

violation of law, nor shall compliance with this Agreement constitute or be construed as an

admission by PABCO of any fact, finding, conclusion, issue of law, or violation of law.

However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities,

and duties of the Parties under this Agreement.

42.    The Parties acknowledge that they are familiar with section 1542 of the California

Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to
> exist in his or her favor at the time of executing the release, which if known by him or her
> must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California

Civil Code section 1542 with respect to any other claims against each other arising from, or

related to, the allegations and claims as set forth in the 60-Day Notice and/or the Complaint.

### VII.    MISCELLANEOUS PROVISIONS

43.    **Effective Date**:  The Effective Date of this Agreement shall be the date upon which the District Court enters the Order dismissing OCE's Complaint with prejudice and retaining jurisdiction to enforce the terms of this Agreement.

44.    **Term of Agreement**:  This Agreement shall terminate three years from the Effective Date.

45.    **Execution in Counterparts**:  The Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

46.    **Facsimile Signatures**:  The Parties' signatures to this Agreement transmitted by facsimile or electronic mail transmission shall be deemed binding.

47.    **Severability**:  In the event that any of the provisions of this Agreement are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

48.    **Construction**:  The language in all parts of this Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

49.    **Authority to Sign**:  The undersigned are authorized to execute this Agreement on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Agreement.

50.    **Integrated Agreement**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Agreement are contained herein.

51.    **Choice of Law**:  This Agreement shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

52.     **Full Settlement**:  This Agreement constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the Agreement has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

53.     **Negotiated Agreement**:  The Parties have negotiated this Agreement, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

54.     **Modification of the Agreement**: This Agreement, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the Parties.

55.     **Correspondence**:  Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to OCE pursuant to this Agreement shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic transmission is not feasible, via U.S. Mail or hand delivery to the following addresses:

OCE:

Jodene Isaacs
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
E-mail:  jisaacs@enviroadvocates.com

Unless requested otherwise by PABCO, any notices or documents required or provided for by this Agreement or related thereto that are to be provided to PABCO pursuant to this Agreement may be provided by electronic mail transmission to the e-mail addresses listed below, or alternatively may be sent by U.S. Mail to the addresses below:

27

PABCO:

Emil Kopilovich
PABCO Building Products, LLC
P.O. Box 364329
Las Vegas, NV 89036

With copies sent to:

Daniel S. Yanagihara, Jr.
10600 White Rock Road
Suire 100, Building B
Rancho Cordova, CA 95670

James T. Dufour
Dufour Law
819 F Street
Sacramento, CA 95814

56. **Impossibility of Performance**: No Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control, including without limitation any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

57. **Assignment**: Subject only to the express restrictions contained in this Agreement, all of the rights, duties and obligations contained in this Agreement shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

58. If for any reason the District Court should decline to approve this Agreement in the form presented, the Parties shall use their best efforts to work together to modify the Agreement within thirty (30) days of receiving notice by District Court so that it is acceptable to the District Court. If the Parties are unable to modify this Agreement in a mutually acceptable manner that is also acceptable to the District Court, this Agreement shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408.


Date: ____February 25____, 2013          Date: _____, 2013


_____          _____
by:   Tiffany Schauer                               by:   Emil Kopilovich
      Executive Director,                                  Vice President - Manufacturing,
      Our Children's Earth Foundation                     PABCO Building Products, LLC


Approved as to form:


Date: _Feb 25____, 2013                     Date: _____, 2013


by:   JODENE ISAACS                        by:   JAMES T. DUFOUR
      Attorney for OCE                              Attorney for Pacific Coast Building
                                                    Products, Inc.


29

58. If for any reason the District Court should decline to approve this Agreement in the form presented, the Parties shall use their best efforts to work together to modify the Agreement within thirty (30) days of receiving notice by District Court so that it is acceptable to the District Court. If the Parties are unable to modify this Agreement in a mutually acceptable manner that is also acceptable to the District Court, this Agreement shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408.

Date: _____, 2013

Date: March 1, 2013

by:   Tiffany Schauer
Executive Director,
Our Children's Earth Foundation

by:   Emil Kopilovich
Vice President - Manufacturing,
PABCO Building Products, LLC

Approved as to form:

Date: _____, 2013

Date: March 1, 2013

by:   JODENE ISAACS
Attorney for OCE

by:   JAMES T. DUFOUR
Attorney for Pacific Coast Building
Products, Inc.

29

**EXHIBIT 1**

**Target Levels and Benchmark Levels for PABCO's Redwood City and San Francisco Facilities**

| Constituent | Target Levels (Water Quality Standards) | Target Reference | EPA Benchmark Values | EPA Analysis Method  or Minimum Detection Limit |
|---|---|---|---|---|
| **Total Suspended Solids** | 25 mg/L | *Proposed Best Available Technology (BAT) Limits for Scrap Yard Storm Water Discharges[1]* | 100 mg/L | Method 160.2 |
| **Oil and Grease** | 10 mg/L | *Proposed BAT Limits for Scrap Yard Storm Water Discharges* | 15 mg/L | Method  418.1 or Method 1664 |
| **Specific Conductivity** | 200 umhos/cm | *EPA Storm Water Benchmark* | 200 umhos/cm | Method 120.1 |
| **pH** | 6.5 to 8.5 | *SF-RWQCB Basin Plan, all surface waters* | 6.0-9.0 | Method 9040b |
| **Iron** | 1.0 mg/L | *EPA NAWQC- EPA Storm Water Benchmark* | 1.0 mg/L | 0.1 mg/L Method 6010 |

---

[1] International Stormwater Best Management Practices (BMP) Database Project 1999-2005, Analysis of Treatment System Performance, February 2006. Available at http://www.bmpdatabase.org/downloads.htm.